IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KIMBERLY RAMIREZ                                                                           PLAINTIFF

v.                                         NO. 3:15-cv-00105 PSH

CAROLYN W. COLVIN, Acting Commissioner                                           DEFENDANT
of the Social Security Administration

MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Ramirez ("Ramirez") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Ramirez maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Specifically, Ramirez maintains that her residual functional capacity was not properly assessed because her subjective complaints were not evaluated in accordance with the factors articulated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). It is made using all of the relevant evidence in the record but must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of making the assessment, the ALJ must evaluate the claimant's subjective complaints. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). The ALJ does so by considering the medical evidence as well as evidence relating to such matters as the claimant's daily activities; the duration, frequency, and intensity of his pain; the dosage, effectiveness, and side effects of his medication; precipitating and aggravating factors; and functional restrictions. See Id.

The ALJ found that Ramirez has severe impairments in the form of back pain and obesity but retains sufficient residual functional capacity to perform the full range of light work. The ALJ made the assessment of Ramirez's residual functional capacity on the basis of the medical evidence and after finding that her subjective complaints were not fully credible.

Substantial evidence on the record as a whole supports the ALJ's assessment of Ramirez's residual functional capacity. The ALJ adequately considered the medical evidence, and his evaluation of it is supported by the record as a whole. The ALJ also adequately considered the non-medical evidence, and his evaluation of it is one of the acceptable evaluations permitted by the record. The ALJ could and did find that Ramirez's subjective complaints were not fully credible.

The medical evidence reflects that in January of 2008, Ramirez injured her back while working at the Manila Nursing Center. See Transcript at 175. The injury appears to have given rise to her complaints of a "lumbar strain with muscle spasm[s] and [a] burning sensation down her right leg." See Transcript at 176. Testing was performed at the St. Bernards Medical Center in February of 2008, and the results revealed a "[s]mall disk herniation of L3-L4 with impingement on the right lateral recess." See Transcript at 176. A second round of testing was performed, and it revealed the following: 1) "[a] [b]road-based, posterior disk bulge at L3-L4, without significant spinal or neuroforaminal stenosis;" and 2) "[m]ild posterior facet joint effusions at levels L2-S1, likely representing early [degenerative disc disease]." See Transcript at 174. It is not clear from the record what treatment was prescribed.

In May of 2011, Dr. Tommy Wagner, M.D., ("Wagner") saw Ramirez for her complaints of back pain brought about after Ramirez bent over and could not move. See Transcript at 190-192. The progress note reflects that she was taking over-the-counter pain medication with no relief. Wagner assessed, inter alia, low back pain and a lumbar strain; prescribed hydrocodone and flexeril for pain; and recommended no heavy lifting.

In January of 2013, Ramirez presented to an ARCare clinic complaining of low back pain. See Transcript at 230. She reported that she had hurt her back in 2009 and had been experiencing back problems ever since. Her vital signs were taken, and they revealed, inter alia, that she had a Body Mass Index ("BMI") within the obese range. She was given an injection for her pain and prescribed Meloxicam.

An x-ray was taken of Ramirez's back in January of 2013 at the St. Bernards Medical Center. See Transcript at 235-236. The x-ray revealed the following: 1) no fractures or obvious signs of acute bony injury, 2) degenerative changes with hypertrophic spurring about the vertebral body margins, and 3) mild lumbar levoscoliosis.

In May of 2013, Dr. Valencia Andrews-Pirtle, M.D., ("Andrews-Pirtle") saw Ramirez for her complaints of back pain. See Transcript at 238-239. The progress note reflects that Ramirez reported an ability to exercise but to taking no pain medication at that time. Andrews-Pirtle assessed back pain and started Ramirez on an over-the-counter arthritis medication. Andrews-Pirtle recommended pain management, but it is not clear from the record whether Ramirez ever received the recommended pain management.

Ramirez maintains that the medical evidence supports her credibility. The Court cannot agree for three reasons. First, as the ALJ could and did find, the medical evidence is minimal. Prior to Ramirez's alleged onset date, there were large periods of time when she sought no medical care for her impairment. After her alleged onset date, she sought medical care on only three occasions. She maintains that the gaps in treatment were caused by her inability to afford medical care, but she has failed to substantiate her representation. See Carrigan v. Astrue, 2009 WL 734116 (W.D.Ark. 2009) (claimant must substantiate statement regarding an inability to afford medical care). Ramirez also maintains that the ALJ should not have considered the infrequency with which Ramirez sought medical care, but the ALJ could consider that fact. See Whitman v. Colvin, 762 F.3d 701 (8th Cir. 2014) (ALJ may consider lack of relative medical care).

Second, as the ALJ could and did find, the medical evidence reflects that Ramirez received only conservative care for her impairment. Save a single injection for pain, Ramirez was treated with only medication. It is true that the medication included hydrocodone and meloxicam, but by the time Andrews-Pirtle saw Ramirez, Andrews-Pirtle only recommended an over-the-counter medication. Ramirez maintains that the ALJ should not have considered the lack of aggressive surgical treatment, but the ALJ could consider that fact. See Crawford v. Astrue, 633 F.Supp.2d 618 (N.D.Ill. 2009) (ALJ may consider that different types of treatment recommended). As the ALJ could and did find, "[t]here is no evidence of ongoing narcotic medication, physical therapy, pain management, etc. since [Ramirez's] alleged onset date." See Transcript at 18.

Third, as the ALJ could and did find, there is little evidence that Ramirez adhered to the recommended treatment regiment. For instance, when Andrews-Pirtle saw Ramirez, Ramirez reported taking no pain medication. Moreover, the record is silent as to whether Ramirez pursued the pain management recommended by Andrews-Pirtle.

Ramirez maintains that the ALJ erred when he observed there was no evidence a health care provider restricted Ramirez from all work activity. The Court acknowledges that the ALJ erred in so observing, see Hutsell v. Massanari, 259 F.3d 707 (8th Cir. 2001) (physician's silence on claimant's work capacity cannot be considered), but the error is harmless. Like the Court of Appeals in Whitman v. Colvin, supra, the Court does not read the ALJ's passing reference as determinative to his decision, particularly since substantial evidence on the record as a whole otherwise supports the ALJ's decision.

The ALJ also considered the non-medical evidence and did so in accordance with the factors articulated in Polaski v. Heckler. The ALJ considered Ramirez's daily activities, see Transcript at 17-18, activities that include performing some household chores, attending sporting events, and driving her daughter to and from work. Ramirez maintains that the description of her daily activities was misleading. Assuming the description was misleading, the error does not warrant a remand. Ramirez testified during the administrative hearing that she cannot walk for more than ten minutes at one time, cannot stand for more than fifteen minutes at one time, and cannot sit for more than thirty minutes at one time. See Transcript at 31-33. In her disability documents, she represented that her typical day consists of the following: "I have to lay in bed for about 15 to 20 [minutes] before getting up. Then, I get up and fix a pot of coffee and go sit back down. Then, I try to clean the house. But that is an all day job. Then, I get a chair and try and help cook." See Transcript at 131. She also represented that when her back is hurting, she cannot even attend to her own care. See Transcript at 132. It is difficult to envision how her impairment can cause such an extreme limitation in her daily activities as the evidence does not support such an extreme limitation in her activities.

The ALJ also considered Ramirez's use of pain medication. See Transcript at 17-18. Although Ramirez has taken prescription medication, she did not take it consistently. By the time Andrews-Pirtle saw Ramirez, Andrews-Pirtle only recommended an over-the-counter medication. Ramirez, in fact, testified during the administrative hearing that she only takes over-the-counter medication. See Transcript at 30.

The ALJ also considered evidence of precipitating and aggravating factors and functional restrictions. For instance, the ALJ considered Ramirez's testimony during the administrative hearing that she takes hot baths and showers to help relieve her pain. See Transcript at 17, 30. The ALJ could and did give little weight to her testimony. Although the Court accepts that the treatment helps ease Ramirez's pain, there is no evidence the treatment was recommended by a medical professional.

The ALJ also could and did note that although Ramirez injured her back in January of 2008, she kept working until April of 2012. Ramirez maintains that continuing to work for more than four years after an allegedly disabling injury enhances her credibility. Although it is possible to construe her work history in such a manner, it is also possible to construe her work history as the ALJ did, i.e., it suggests that Ramirez's impairment is not as severe as she alleges.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, Ramirez has not offered a sound reason for deviating from that rule. The evaluation of her subjective complaints made by the ALJ is one of the acceptable interpretations of all the evidence.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Ramirez's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 11th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE